IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MATTHEW DAVID BERRY,
    Plaintiff,

v.    2:16-CV-976

COMMISSIONER OF SOCIAL
SECURITY,
    Defendant.

MEMORANDUM

Mitchell, M.J.:

Presently before the Court for disposition are cross motions for summary judgment. For the reasons set forth below, the plaintiff's motion (ECF No. 15) will be granted, the defendant's motion (ECF No. 19) will be denied, and the matter will be remanded to the Commissioner for further proceedings.

Plaintiff filed an application for Supplemental Security Income and Disability Insurance Benefits on August 31, 2010 (R. 104, 295). His application was denied at the initial level of review. (R. 98-100). On February 1, 2012, ALJ Leslie Perry-Dowdell held a hearing, following which she denied Plaintiff's application. (R. 54-79, 101-19). The Appeals Council, however, granted Plaintiff's request for review and remanded the case for further consideration. (R. 120-23). The ALJ held another hearing on July 31, 2014, but benefits were again denied. (R. 9-53). On May 9, 2016, the Appeals Council denied Plaintiff's request for review. (R. 1-6). This action was initiated on June 29, 2016.

In reviewing an administrative determination of the Commissioner, the question before the court is whether there is substantial evidence in the agency record to support the findings of the Commissioner that the plaintiff failed to sustain his burden of demonstrating that he was

1

disabled within the meaning of the Social Security Act. Richardson v. Perales, 402 U.S. 389 (1971); Adorno v. Shalala, 40 F.3d 43 (3d Cir. 1994).

42 U.S.C. Section 405(g) provides that:

The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive....

Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Johnson v. Comm'r., 529 F.3d 198 (3d Cir. 2008). The court may not set aside a decision supported by substantial evidence. Hartranft v. Apfel, 181 F.3d 358 (3d Cir. 1999).

As set forth in 20 C.F.R. § 416.905(a) disability is defined as:

the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

In addition, a person will be considered disabled if he/she is

(a) . . . permanently and totally disabled as defined under a State plan approved under title XIV or XVI of the Social Security Act, as in effect for October 1972; (b) . . . received aid under the State plan . . . for the month of December 1973 and for at least one month prior to July 1973; and (c) . . . continue[s] to be disabled as defined under the State plan.

20 C.F.R. § 416.907.

A physical or mental impairment is defined in 20 C.F.R. § 416.908 as an:

impairment [which] result[s] from anatomical, physiological, or psychological abnormalities which [are demonstrated] by medically acceptable clinical and laboratory diagnostic techniques.

For purposes of determining whether or not the plaintiff met the eligibility requirements, certain evidence was considered by the Commissioner.

2

At the hearings held on February 1, 2012, and July 31, 2014, the plaintiff appeared with counsel and testified that, as of the date of the second hearing, he was 54 years old (R. 36); that he lives alone (R. 36, 60); that he wears a brace on his right wrist for carpal tunnel syndrome (R. 36, 59); that it is difficult for him to grab things, pick things up, and pull things with his right hand; that he has tingling in his fingers (R. 37); that he can lift "maybe 10, 15 pounds" with his right hand (R. 40, 61); that he takes Vicodin three times a day for the pain in his hand (R. 40); that he is on welfare (R. 74); and that he can drive (though he does not have a car). At the first hearing, Plaintiff testified that he had also been undergoing physical therapy for a "tear" in his neck or shoulder. (R. 62). The plaintiff also testified that he has no limitations on standing or sitting, that he smokes, that he has trouble sleeping, that he experiences about four or five headaches a week that he treats with Tylenol, that he is sensitive to light and sound, that he has received treatment for depression (R. 67-70), that he experiences anxiety, and that he has difficulty with his concentration and attention span (R. 71).

In terms of activities of daily living, the plaintiff testified that he watches TV most of the day, can clean his apartment, cooks his own meals, does his own grocery shopping and pulls his groceries home from the store in a cart, goes to church "now and then," does not have any hobbies, and occasionally visits his family (R. 65-66). On bad days, however, he testified that he doesn't "even feel like getting out of bed, or if it's a little bit better than that, I would just stay in my apartment and to actually just watch TV." (R. 73).

At the hearings, vocational experts were also called upon to testify. Plaintiff's past work as a commercial cleaner was described as heavy, unskilled work, while his past work as a stock clerk was described as heavy, skilled work. (R. 43). When asked to assume a person of the plaintiff's age and work experience who was limited to light work, except the person would have

3

to avoid constant use of his right dominant hand and jobs requiring reaching above shoulder level, the vocational expert testified that such an individual could not perform the plaintiff's past work. (R. 43). However, the vocational expert testified that such an individual would be able to perform work that exists in significant numbers in the national economy, including the representative jobs of storage rental clerk, school crossing guard, and security guard. (R. 43-44). In his second hypothetical, the ALJ asked the vocational expert to assume that the individual would be limited in his ability to push and pull with his right arm. (R. 44). In response, the vocational expert testified that the individual would still be able to perform the same jobs. (R. 44). The same was true when the ALJ added the following additional limitation: the individual's work had to be limited to routine tasks performed in a work environment free of fast-paced production requirements. (R. 45). Finally, when the ALJ asked the vocational expert to assume that the individual could only perform work in isolation from the public with only occasional supervision and only occasional interaction with coworkers, the vocational expert testified that the individual could perform the following jobs: folding machine operator and document prep person. (R. 45).

In addition, the ALJ considered other evidence,[1] including voluminous records from Plaintiff's treatment through the Department of Veteran Affairs ("VA"), in reaching her decision.

The record reveals that the plaintiff underwent right carpal tunnel release surgery on January 17, 2007. (R. 1073). Throughout the relevant time period, he continued to complain of pain and tingling in his right hand, and in 2014, he started to notice symptoms in his left hand, as well. (R. 2280-82, 2292). The most recent nerve conduction study showed evidence of carpal

---

[1] As noted by the ALJ, the plaintiff suffers from various physical and mental impairments. Plaintiff's arguments, however, pertain only to his alleged physical impairments, so the evidence regarding his mental impairments will not be recounted here. Plaintiff's migraines are also not at issue in this appeal. Nor does he argue that he suffers residuals from his renal cell carcinoma that make it more difficult for him to work than the ALJ concluded.

4

tunnel syndrome, but it was noted to be "very mild in degree electrically without denervation." (R. 2281). Testing of his left hand was normal, and there was no electrodiagnostic evidence for a cervical radiculopathy. (R. 2282). Plaintiff was scheduled for revision surgery on his right hand on September 15, 2014. (R. 2182-83). However, it is not clear from the record whether he underwent this procedure.

Plaintiff also has a history of chronic neck and shoulder pain, stemming from degenerative disc disease and bilateral shoulder degenerative joint disease, for which he was taking Vicodin and gabapentin. (R. 2253). MRI results showed moderate-to-severe left and moderate right neuroforaminal narrowing at C4-C5 and C5-C6, and moderate narrowing at C6-C7. (R. 2281). No surgical intervention was recommended, however. (R. 2253). In March 2014, he fell and injured his knee, for which he was prescribed a knee brace. (R. 2189, 2252, 2283). Despite the pain, he had no knee instability and his gait was normal. (R. 2252).

In addition to medication, the plaintiff was prescribed a neoprene support for his right shoulder, a right wrist cock up splint, a TENS unit, and physical and occupational therapy, which as of June 2013, was noted to have been no longer effective. (R. 1165, 1885, 1911, 1943, 2024, 2031, 2033, 2053-54).

Based on the evidence presented, the Administrative Law Judge ("ALJ") concluded, in pertinent part:

> The claimant meets the insured status requirements . . . through March 31, 2010.
>
> The claimant has not engaged in substantial gainful activity since July 4, 2008, the amended alleged onset date . . . .
>
> The claimant has the following severe impairments: right renal cancer, status post nephrectomy, degenerative disc disease, right carpal tunnel syndrome, status post right carpal tunnel release, bilateral shoulder degenerative joint disease, migraine headaches, type II diabetes mellitus, major depressive disorder, anxiety disorder and left knee pain . . . .

5

The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 . . . .

. . . the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except:
- He can lift up to 20 pounds occasionally and 10 pounds frequently.
- He can stand and walk for up to 6 hours and sit for up to 6 hours in an 8-hour work day with normal breaks.
- He must avoid constant use of his right dominant hand.
- He must avoid jobs requiring reaching above shoulder level.
- He is limited in his ability to perform pushing and pulling with the right upper extremity.
- His work would be limited to routine tasks performed in a work environment free of fast-paced production requirements.
- His work would be isolated from the public with only occasional supervision and interaction with coworkers. . . .

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.

The claimant suffers from right renal cancer, status post nephrectomy . . . . The claimant's improvement after surgery, normal physical examination findings and lack of evidence of recurrence shows that he is less limited than alleged.

The claimant suffers from degenerative disc disease, right carpal tunnel syndrome, status post right carpal tunnel release, bilateral shoulder degenerative joint disease, migraine headaches, type II diabetes mellitus and left knee pain . . . . Despite his impairments, he retains the ability to live alone and do all of the cleaning and cooking, perform personal care tasks, walk to the grocery store and pull his groceries home in a cart, put groceries away on a low shelf, do laundry, hold a cigarette to smoke, drive, use a checkbook or money order, take care of his mother when she is ill, fill out forms, take walks and check his blood sugar, indicating that he is less limited than alleged . . . .

The claimant suffers from major depressive disorder and anxiety disorder . . . . The claimant's generally normal mental status examination findings along with his limited treatment and ability to live alone and manage his household indicates that he is less limited than alleged.

The claimant's allegations are out of proportion to and inconsistent with the evidence of record. The claimant testified that he was compliant with physical and

occupational therapy, but the records note that he had not been compliant with physical therapy, canceled consultations, attended only intermittently and his providers were "not impressed with his determination to get better" . . . . In addition, the record notes that he did not show up for all scheduled appointments, did not take his medications as prescribed, used his wrist splint during the day instead of at night as prescribed, did not follow his diabetic diet, did not bring his blood sugar logs to appointments and ran out of his pain medications too fast . . . . The claimant's non-compliance with treatment indicates that either his condition is less limiting than alleged or that he is not motivated to improve his condition and undermines the veracity of his allegations. Additionally, the record notes that the claimant's functional capacity evaluation was invalid because his validity profile was invalid with only 60% passing . . . . This presentation further undermines his allegations as it shows that he was manipulating his performance in the functional capacity examination by not demonstrating his full functional abilities . . . . The claimant's single focus on disability to the extent that he turns down potentially helpful treatment further undermines the veracity of his allegations . . . .

As for the opinion evidence, Dr. Sgro and Dr. Megan L. Kruse opined that the claimant could lift up to 10 pounds occasionally, could not use his hands and shoulders for gross and fine manipulation more than occasionally and would often require additional breaks. She further opined that the claimant would have about 20 bad days per month during which his symptoms would increase and he would not be able to complete and 8-hour shift . . . . The undersigned gives their opinion little weight, as it is inconsistent with the evidence of record indicating generally full strength and a full range of motion of his upper extremities, only intermittent physical therapy and generally no neurological deficits . . . .

Dr. Megan L. Kruse opined that "if [his] diabetes or pain or mood disorder were out of control" that the claimant would not be able to work. The undersigned gives her opinion little weight . . . .

Dr. Ronit Wollstein opined that the claimant could perform medium work. The undersigned gives his [sic] opinion little weight as the evidence of record, including his physical examination findings, showing positive Tinel's and Phalen's tests in his right wrist, tenderness of his shoulders and cervical spine and positive shoulder impingement tests, along with the MRIs showing a herniated cervical disc and the EMG showing residual carpal tunnel syndrome in his right hand, show that he is more limited than found by Dr. Wollstein . . . .

The Veteran's Administration notes state that the claimant has a 40% non-VA disability . . . . [A] disability rating by the Department of Veterans Affairs is of little probative value in these proceedings . . . .

The State Agency medical consultant, Mary Ellen Wyszomierski, M.D., opined that the claimant was limited to light work and could occasionally climb ladders,

7

but never climb ropes or scaffolds . . . . The undersigned gives Dr. Wyszomierski's opinion significant weight . . . .

The State Agency psychological consultant, Roger Glover, Ph.D., opined that the claimant had moderate limitations in his ability to understand, remember and carry out detailed instructions, maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances, complete a normal workday and workweek without interruptions from psychologically based symptoms, perform at a consistent pace without an unreasonable number and length of rest periods, interact appropriately with the general public and respond appropriately to changes in the work setting . . . . The undersigned gives his opinion significant weight . . . .

The claimant is unable to perform any past relevant work . . . .

The claimant was born on December 15, 1959 and was 48 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age . . . .

Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform . . . . When a claimant cannot perform substantially all of the exertional demands of work at a given level of exertion and/or has nonexertional limitations, the medical-vocational rules are used as a framework for decisionmaking unless there is a rule that directs a conclusion of "disabled" without considering the additional exertional and/or nonexertional limitations . . . .

If the claimant had the residual functional capacity to perform the full range of light work, a finding of "not disabled" would be directed by Medical-Vocational Rule 202.20 and Rule 202.13. However, the claimant's ability to perform all or substantially all of the requirements of this level of work been impeded by additional limitations. To determine the extent to which these limitations erode the unskilled light occupational base, the Administrative Law Judge asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The vocational expert testified that given all of those factors the individual would be able to perform the requirements of representative occupations such as: office helper . . . folding machine operator . . . document preparer . . . .

(R. 15-25).

Plaintiff advances two arguments in support of his motion for summary judgment: 1) he

contends that he fell within a "borderline-age situation," yet the ALJ failed to consider whether the older age category – "advanced age" – should have been used, which would have directed a finding of "disabled;"[2] and 2) he argues that the ALJ erred by assigning "little weight" to the opinions of two of his treating physicians, Drs. Sgro and Kruse, and assigning "significant weight" to the opinion of the state agency non-examining consultant, Dr. Wyszomierski.

The Commissioner responds that: 1) the ALJ did not mechanically apply the grids but relied on a vocational expert and there are no "additional vocational adversities" to justify using the older age category; and 2) the ALJ properly assigned little weight to the opinions of Drs. Sgro and Kruse because they conflicted with other evidence in the record, including the opinion of Dr. Wyszomierski and the plaintiff's self-reported activities; Dr. Kruse's November 2013 opinion was conclusory and failed to explain the plaintiff's functional abilities; the opinions were set forth in "check-box forms;" and finally, according to the Commissioner, "the opinions of Drs. Sgro and Kruse must be balanced against their desire to help their patient succeed in his claim for benefits." (Def.'s Br. at 11.)

### Borderline-Age Situation

In considering whether an individual is disabled, the Social Security Administration "will consider [the individual's] chronological age in combination with [his] residual functional capacity, education, and work experience." 20 C.F.R. § 416.963(a). Advancing age is considered "to be an increasingly limiting factor in the person's ability to make" an adjustment to other work. Id. There are three age categories listed in 20 C.F.R. § 416.963(c)-(e): younger person (under age 50), person closely approaching advanced age (age 50-54), and person of advanced age (age 55 or older). These age categories become critically important when applying the Grids,

---

[2] As the plaintiff acknowledges, this argument is only relevant for his SSI claim because, for the purposes of establishing eligibility for DIB, he had to prove that he was disabled as of his date last insured, which, as the ALJ found, is March 31, 2010.

which "consist of a matrix of four factors – physical ability, age, education, and work experience – and set forth rules that identify whether jobs requiring specific combinations of these factors exist in significant numbers in the national economy." Sykes v. Apfel, 228 F.3d 259, 263 (3d Cir. 2000) "On their face, the Grids make bright-line distinctions by age[.]" Lucas v. Barnhart, 184 F. App'x 204, 206 (3d Cir. 2006). However, "[t]he Regulations caution against mechanical application of the grids in a 'borderline situation.'" Davis v. Astrue, 2009 WL 3241853, at *6 (W.D. Pa. Oct. 5, 2009) (quoting 20 C.F.R. § 416.963(b)). Specifically, the regulations provide, in pertinent part:

> If you are within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that you are disabled, [the Commissioner] will consider whether to use the older age category after evaluating the overall impact of all the factors of your case.

20 C.F.R. § 416.963(b).

"If the ALJ does not properly apply [that regulation], and if proper application of [it] could change the ALJ's determination, the matter must be remanded for further consideration." McElroy v. Comm'r of Soc. Sec., 2015 WL 8784604, at *6 (W.D. Pa. Dec. 15, 2015) (citing Kane v. Heckler, 776 F.2d 1130, 1134 (3d Cir. 1985)). In Kane, for example, the Third Circuit Court of Appeals remanded the case because the ALJ did not address § 416.963(b) and "[t]he choice of an age category had a decisive impact on the disability determination." 776 F.2d at 1133. If the plaintiff had been "placed in the 'advanced age' category (55 and over)," then he would have been "found disabled if his skills were not transferrable." Id.

The plaintiff argues that the same result should obtain in this case because: 1) he was just 25 days shy of his 55th birthday when the ALJ issued her decision; and 2) application of the higher age category would have resulted in a finding that he is disabled under 20 C.F.R. § 404, Subpt. P, App. 2, 202.04 ("Grid Rule 202.04"). The Court agrees.

"[T]here is no brightline rule for what constitutes a 'borderline situation[,]'" but "[i]n the Third Circuit, forty-eight days clearly" qualifies. Davis, 2009 WL 3241853, at *7 (citing Kane, 776 F.2d at 1134). So, too, then does 25 days – and, in fact, the Commissioner does not quibble with this. Moreover, Plaintiff is correct that an application of Grid Rule 202.04 would lead to a finding that he is disabled. Specifically, under Rule 202.04, an individual who (a) has the "[m]aximum sustained work capability" to perform light work, (b) is advanced age (55 or over), (c) is a high school graduate, and (d) has only unskilled previous work history (or none at all) is presumed to be disabled. 20 C.F.R. § 404, Subpt. P, App. 2, 202.04. Taking those two facts into consideration, the ALJ should have considered whether it would have been appropriate to apply the higher age category. Because she did not, remand is required.

The Commissioner's arguments to the contrary are not persuasive. First, the Commissioner argues that "controlling law prohibit[ed] the ALJ from relying exclusively on the Grids to render a disability finding" since the plaintiff had "exertional *and* non-exertional limitations." (Def.'s Br. at 5) (citing Sykes, 228 F.3d at 269). Instead, according to the Commissioner, the ALJ was required to consult a vocational expert, which is what she, in fact, did. This argument is misguided. It is true that the regulations provide that the Medical-Vocational Guidelines will generally not be directly applied when a claimant has exertional and nonexertional limitations. 20 C.F.R. § 404.1569a(d). But that general restriction does not apply if "there is a rule that directs a conclusion that [the individual is] disabled based upon [his] strength [i.e., exertional] limitations." Id. (emphasis added). In other words, as explained in Social Security Ruling 83-14, "where a person's residual functional capacity (RFC), age, education, and work experience coincide with the criteria of an exertionally based rule in Table No. 1, 2, or 3 – and that rule directs a conclusion of 'Disabled' – there is no need to consider the additional

11

effects of a nonexertional impairment since consideration of it would add nothing to the fact of disability." 1983 WL 31254, at *3 (S.S.A.1983). Thus, contrary to the Commissioner's argument, the ALJ in this case could have relied on the Grids to reach a conclusion that Plaintiff was disabled, irrespective of the presence of nonexertional limitations.[3]

Second, the Commissioner argues that the plaintiff has not shown "additional vocational adversities," so the application of the higher age category is not warranted. In support of this argument, the Commissioner cites a portion of the HALLEX manual, which states:

> Additional vocational adversities are the presence of an additional impairment(s) which infringes upon – without substantially narrowing – a claimant's remaining occupational base; or the claimant may be barely literate in English, have only a marginal ability to communicate in English, or have a history of work experience in an unskilled job(s) in one isolated industry or work setting. (An isolated industry would be such as fishing or forestry.) Other adverse circumstances in individual cases may justify using the higher age category.

HALLEX § II-5-3-2, 2003 WL 25498826. The Commissioner, in turn, argues that the plaintiff completed twelve years of formal education, has "specialized" training in construction, has a diverse work history, and has no difficulty speaking English. True enough, but the plaintiff does have other limitations that could infringe upon his remaining occupational base. For example, the restriction on overhead reaching might not significantly erode the light occupational base, but it might nonetheless infringe on it. See, e.g., Program Operations Manual System (POMS), DI 25015.006(E)(1)(d), Borderline Age, https://secure.ssa.gov/apps10/poms.nsf/lnx/0425015006 (last visited January 5, 2017). Or there might be "other adverse circumstances" that justify applying the higher age category. However, because the ALJ did not discuss this issue in her decision, the Court cannot ascertain whether substantial evidence supports the Commissioner's

---

[3] The cases upon which the Commissioner relies – Roberts v. Barnhart, 139 F. App'x 418 (3d Cir. 2005), Holland v. Comm'r of Soc. Sec., 2012 WL 11052 (W.D. Pa. Jan. 3, 2012), and Stoecklein v. Colvin, 2015 WL 1000723 (W.D. Pa., Mar. 5, 2015) – are likewise inapposite. In those cases, the claimants were five to six months from reaching a higher age category, and thus the courts determined that a borderline age situation was not even present. Thus, to the extent the courts in those cases addressed the issue presented in this case, it was only in *dicta*.

12

conclusion or whether she even considered applying the higher age category. See Phillips v. Astrue, 671 F.3d 699, 706 (8th Cir. 2012) (explaining that "it is this court's job to review whether substantial evidence exists to support the Commissioner's decision, and [the court] simply cannot complete this review without some showing as to the Commissioner's consideration of applying the higher age category, which he indisputably is required to do"). Instead, "it will be incumbent upon the ALJ to determine, in the first instance, whether the Plaintiff has additional vocational adversities which would support the use of the higher age category." Vaughn v. Astrue, 2011 WL 1628031, at *6 (W.D. Pa. Apr. 28, 2011); see also Daniels v. Apfel, 154 F.3d 1129, 1134 (10th Cir. 1998) ("placing the burden on the Commissioner of determining in the first instance what age category to apply is consistent with the Commissioner's existing burdens").

### Treating Physician Doctrine

Under the treating physician doctrine, "a court considering a claim for disability benefits must give greater weight to the findings of a treating physician than to the findings of a physician who has examined the claimant only once or not at all." Mason v. Shalala, 994 F.2d 1058, 1067 (3d Cir. 1993). The regulations provide that the ALJ should generally give more weight to an examining source than a non-examining source, more weight to opinions from treating sources than non-treating sources, more weight based on the length of the physician's treatment, more weight to opinions that are consistent with one another, and more weight to the opinions of specialists than those of non-specialists. 20 C.F.R. § 416.927(c). This rule, however, does not mean that the ALJ or the court is obligated to accept conclusions of the treating physician if they are unsupported by medical evidence, and a claimant's RFC is an administrative finding reserved to the Commissioner. 20 C.F.R. § 416.927(d)(2). Moreover, the final responsibility for

13

determining whether a claimant is disabled is reserved exclusively to the Commissioner, not to any particular medical source. 20 C.F.R. § 416.927(d)(1).

Plaintiff argues that Drs. Sgro and Kruse are both board certified internists who have treated him since January 2010 and January 2013, respectively. He further contends that their opinions (R. 1414, 2156), which are set forth in detail above, would have led to a conclusion that he is disabled if they had been adopted. The ALJ, however, gave their opinions little weight. The plaintiff contends that, in doing so, the ALJ failed to consider the longitudinal treating relationships these physicians shared with the plaintiff, as well as their specialization. He also argues that the ALJ provided legally insufficient reasons for discrediting their opinions. The Court agrees.

The ALJ discounted these opinions as "inconsistent with the evidence of record indicating generally full strength and a full range of motion of his upper extremities, only intermittent physical therapy and generally no neurologic deficits." As Plaintiff points out, though, this was a selective interpretation of the evidence of record, which ignored several medical findings and observations that were not necessarily inconsistent with the opinions from Drs. Sgro and Kruse. As the ALJ herself recognized when assigning "little weight" to the opinion of Dr. Wollstein that the plaintiff could perform "medium" work, the record contained evidence of "positive Tinel's and Phalen's tests in his right wrist, tenderness of his shoulders and cervical spine and positive shoulder impingement tests, along with the MRIs showing a herniated cervical disc and the EMG showing residual carpal tunnel syndrome in his right hand." (R. 23). The ALJ offered no explanation why the same findings, which were enough to reject Dr. Wollstein's opinion, did not support the more limited assessments of Drs. Sgro and Kruse. In fact, the ALJ cited to the very same pages in the record as purportedly being inconsistent with

14

both the opinions of Drs. Sgro and Kruse *and* the opinion of Dr. Wollstein. Without such an explanation, it is not clear to the Court how that can be so. Furthermore, while the Commissioner argues that the ALJ properly rejected the opinions of these physicians because they were presented on "checkbox forms," which are generally considered weak evidence, this argument rings hollow in light of the fact that the ALJ instead relied on another "checkbox form" completed by the state agency medical consultant, Dr. Wyszomierski (R. 1200-04), in formulating her RFC. See McElroy, 2015 WL 8784604, at *8.

Plaintiff also argues that the ALJ's reliance on Dr. Wyszomierski's opinion was erroneous because the opinion was rendered on October 18, 2010, which is more than four years before the administrative hearing, and did not take into consideration approximately 1,200 pages of the plaintiff's subsequent medical records, including the opinions of Drs. Sgro and Kruse. On this point, the Court also agrees.

As one court in the Middle District of Pennsylvania recently explained:

> If a non-examining source precedes material medical evidence or precedes a materially different treating source opinion, the ALJ would be required to reinterpret the medical record following the non-examining source opinion in order to reject a treating source opinion. Consistent with 96-6p, the Third Circuit has not upheld, in a precedential decision, where a treating source opinion is outweighed by only a single non-treating, non-examining medical opinion from a source who did not review the entire case record.

Reeves v. Colvin, 2016 WL 4650071, at *22 (M.D. Pa. Aug. 22, 2016) (citing Brown v. Astrue, 649 F.3d 193 (3d Cir. 2011); Diaz v. Comm'r of Soc. Sec., 577 F.3d 500 (3d Cir. 2009); Brownawell v. Comm'r of Soc. Sec., 554 F.3d 352 (3d Cir. 2008); Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000)). Accordingly, "[a]n RFC form prepared by a non-examining state agency medical consultant cannot constitute substantial evidence where it is not based upon the full medical record before the ALJ at the time of hearing and decision, particularly where the

15

medical evidence suggests a deterioration in the claimant's condition." Kroh v. Colvin, 2014 WL 4384675, at *21 (M.D. Pa. Sept. 4, 2014) (citations omitted).

As the plaintiff argues, Dr. Wyszomierski's report was prepared some four years prior to the ALJ's decision. There is considerable evidence about the plaintiff's carpal tunnel syndrome, back/neck pain, and knee pain that Dr. Wyszomierski did not consider, in addition to the opinions of Drs. Sgro and Kruse. Additionally, while the ALJ was by no means required to order a consultative examination, under the circumstances here, it would have been preferable for her to do so. The Appeals Council alluded to this in its Order remanding the case to the ALJ following her first decision, inasmuch as it directed the ALJ to "[o]btain updated and additional evidence concerning the claimant's impairments," which "may include, if warranted and available, consultative physical and psychological examinations and medical sources statements about what the claimant can still do despite the impairments." (R. 121). Since the ALJ did not provide sufficient reasons for discounting the opinions of Drs. Sgro and Kruse in favor of the opinion of the state agency consultant, her decision cannot stand.

The Commissioner's contention that these two opinions "must be balanced against [the doctors'] desire to help their patient succeed in his claim for benefits" is without merit for two reasons. First, the ALJ did not offer this as a basis for discounting the opinions of these physicians. See Fargnoli v. Massanari, 247 F.3d 34, 44 n.7 (3d Cir. 2001) (the Commissioner cannot augment an ALJ's decision with additional factual findings or legal justifications not presented to the ALJ). And even if she had, she would have been misguided – just as the Commissioner is in raising argument now. Notwithstanding Judge Posner's dicta in the case of Hofslien v. Barnhart, 439 F.3d 375, 377 (7th Cir. 2006), cited by the Commissioner, this Court finds that "[a]llowing the ALJ to conclude that a physician is biased simply because they have a

16

treating relationship with a claimant, without any evidence of actual bias, directly contradicts the Regulations instructing the ALJs to assign greater weight to evidence from treating sources, because of their treating relationship with a claimant." McDonnell v. Colvin, 2016 WL 1425798, at *6 (M.D. Pa. Mar. 18, 2016) (citations omitted).

      For all of these reasons, this case will be remanded for the Commissioner for further review. An appropriate order will be entered.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MATTHEW DAVID BERRY,
    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,
    Defendant.

)
)
)
)
)  2:16-CV-976
)
)
)
)
)
)

ORDER

AND NOW, this 7th day of March, 2017, for the reasons set forth in the Memorandum filed contemporarily with this Order, the plaintiff's motion for summary judgment (ECF No. 15) is GRANTED, the defendant's motion for summary judgment (ECF No. 19) is DENIED, and the matter is remanded to the Commissioner is for further proceedings.

                                          s/ Robert C. Mitchell_____
                                          ROBERT C. MITCHELL
                                          United States Magistrate Judge